The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MONIQUE BOND and BRIGITTE GINGRAS, | AT LAW AND IN ADMIRALTY |
| Plaintiffs, | Case No. 2:17-cv-01639-MJP |
| vs. | **TRIAL BRIEF OF DEFENDANTS CRUISEPORT CURACAO C.V., HOLLAND AMERICA LINE N.V. and HOLLAND AMERICA LINE INC.** |
| CRUISEPORT CURACAO C.V., a foreign corporation;  HOLLAND AMERICA LINE N.V., foreign corporation; and HOLLAND AMERICA LINE INC., a Washington corporation, | |
| Defendants. | |

Defendants, CRUISEPORT CURACAO C.V., HOLLAND AMERICA LINE N.V. and

HOLLAND AMERICA LINE INC., respectfully submit this Trial Brief:

/ / /

/ / /

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 1

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1

## I.      INTRODUCTION:

2

3          This action was filed on or about November 2, 2017 by Plaintiffs MONIQUE BOND

and BRIGETTE GINGRAS.  The Complaint names Defendants CRUISEPORT CURACAO,

4

C.V., HOLLAND AMERICA LINE N.V. and HOLLAND AMERICA LINE INC.

5          HOLLAND AMERICA LINE N.V. admits that at all material times it was the operator

of the MS NOORDAM.  Plaintiffs entered into a Cruise Contract with HOLLAND AMERICA

6

LINE N.V. for the subject cruise. The vessel owner, HAL Antilles N.V., was identified in the

7

Answer, but has not been named. Defense counsel has asked Plaintiffs to dismiss CRUISEPORT

8

CURACAO, C.V. and HOLLAND AMERICA LINE INC., to no avail.

9          Ms. Bond seeks compensatory damages against Defendants for personal injury.  Ms.

10

Gingras seeks compensatory damages against Defendants for loss of consortium.

11          Defendants dispute Plaintiffs' allegations and contend Plaintiffs cannot prove

negligence on the part of Defendants. The alleged accident, injuries, losses or damages were

12

partially or wholly caused or contributed to by Plaintiffs' own carelessness and negligence.

13

Defendants assert that Plaintiffs' alleged injuries, losses and/or damages, if any, were and are the

14

result of an open, obvious, and apparent "danger" that was known to and recognized by Plaintiffs.

15

Defendants assert that Ms. Bond had injuries and conditions which pre-existed the subject

16

incident.  Defendants' liability, if any, for Plaintiffs' injuries, illnesses, losses or damages, is

17

governed by and limited to the applicable provisions of the Cruise Contract entered into between

18

the parties. Defendants are entitled to all the exemptions from and limitations of liability provided

19

in or authorized by the laws of the United States and general maritime law.  (Defendants assert that

20

Ms. Gingras' claim for loss of consortium is barred by general maritime law, and preserve this

21

issue for appeal.  Defendants assert they are entitled to any and all liability limitations, immunities

and rights applicable to them under the "Athens Convention relating to the Carriage of Passengers

22

and their Luggage by Sea (PAL)," adopted 1974, as well as any of its subsequent Protocols as

23

applicable according to law, and preserve this issue for appeal.)

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 2

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1    Defendants therefore contend that Plaintiffs have no right to any relief prayed for, or any

2  relief whatsoever.

3  **II.      STATEMENT OF FACTS**

4    Plaintiff Bond, a 60-year-old resident of Ottawa, Canada, sustained a displaced

5  transverse fracture of her right patella while aboard the MS NOORDAM on a 29-day Australia

6  and New Zealand Discovery cruise that departed from Auckland, New Zealand on November 8,

7  2016. The incident occurred on December 5, 2016, the 27th day of the cruise, while the vessel

8  was at sea in the South Pacific. On December 5, 2016, Ms. Bond was walking in the corridor

9  linking the outside area of Deck 9 with the indoor Greenhouse Spa & Salon/Fitness Center when

10  she allegedly stepped onto a patch of water on the corridor's ceramic floor, causing her left foot

11  to slip forward. She fell onto her right knee. Ms. Bond's wife, Ms. Gingras, alleges loss of

   consortium damages as a result of Ms. Bond's injuries.

12    Ms. Bond testified during her March 29, 2018 deposition that on December 5, 2016,

13  Plaintiffs left their cabin at approximately 9:00 a.m. and went for a walk on the Promenade Deck.

14  They attended the Mariner's Brunch, during which Ms. Bond had one flute of champagne at

   approximately 11:00 a.m. Plaintiffs dropped off some items in their cabin on Deck 8 and went to

15  the Lido Deck (Deck 9). They walked to the forward end of the vessel to look for a friend at the

16  gym. In order to get to the gym, Plaintiffs walked by the pool area and then entered a covered

17  corridor leading to the entrance of the Greenhouse Spa. Ms. Bond turned behind her to wave at a

18  vessel salon hairdresser who was sitting at a table near the Spa. Ms. Bond turned and continued

19  to walk a few steps while looking forward. She then looked down as her left leg was just about to

20  land in a patch of clear substance which she believed to be water. She described the puddle was

21  slightly bigger than 8" by 11" and was on the ceramic floor tile, approximately 4' - 5' away from

22  a metal grate. Ms. Bond's left leg started sliding forward and she landed on her right knee  She

23

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 3

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1

2

fell sideways onto the left side of her body and rolled onto her back. Ms. Bond confirmed that the area had good natural lighting. She was wearing Sperry deck shoes with a rubber tread sole.

3

4

Ms. Bond testified that the following photograph was taken by Ms. Gingras and accurately depicts where her accident took place and the direction she was traveling in when the incident occurred:

5

6

7

8

9

10

11

12

13

14



15

The photograph below more clearly depicts the accident area:

16

17

18

19

20

21

22

23



Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 4

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1    Ms. Bond confirmed that she had previously walked through the area approximately

2  once per day prior to her accident, or at least 26 times. She denied previously seeing standing water

3  in the specific area where her accident happened, although she recalled seeing standing water in the

4  corridor leading to the gym, open areas of the Lido Deck near the pool, and in the Greenhouse Spa

5  near the hydro pool and the changing room. She did not know the source of the standing water and

6  speculated that passengers leaving the pool area may have dripped water, or that another passenger

   may have dropped water at the location.

7    Ms. Gingras testified that she and Ms. Bond had walked through the area where the

8  accident occurred at least once per day in the weeks prior to the accident. She had observed

9  standing liquids in the hallway every day.

10    Ms. Bond's unfortunate accident was simply the result of her inattention. Ms. Bond

11  testified that she did not look at the ground while walking until immediately prior stepping into the

12  alleged puddle. Ms. Bond indicated by asterisk in the Lido Deck Plan below where here accident

   took place:

13

14



15

16

17

18

19

20

21

22

23

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 5

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1         Common sense alone dictates that areas near pools and spas (such as where Ms. Bond

2   fell) may have standing water. Nevertheless, passengers are warned that wet decks may be

3   slippery. Passengers are instructed to review the From the Captain safety booklet and watch the

4   passenger safety video the first day of the cruise. The Safety Reminders section of the From the

5   Captain booklet states in part, "Wet decks may be slippery." The passenger safety video states at

6   approximately the 8:46 minute mark, "wear slip resistant shoes at all times" and shows a sign that

    states "caution: deck slippery when wet."

7         Ms. Bond is an experienced cruiser, having gone on a total of 13 cruises with

8   Defendants. As an experienced cruiser, Ms. Bond should have been even more aware that decks

9   near pool areas can have standing water and can be slippery when wet.

10        Defendants' Biomechanics Expert Isaac Ikram inspected the accident area on April 28,

11  2018. He will testify that the floor surfaces adjacent to the accident site provided adequate traction

12  to prevent heel slips for fast walking individuals wearing smooth rubber soled shoes. Mr. Ikram

    will also testify that based upon Ms. Gingras' deposition testimony that Plaintiffs had walked

13  through the area prior to the accident and frequently observed standing water, they had knowledge

14  of a potentially slippery condition which provided an opportunity for gait modification, reducing

15  the likelihood of slip and falls.

16        Plaintiffs have not identified the liquid substance Ms. Bond slipped in, but assume it was

17  water. Plaintiffs have no evidence as to how long the liquid was present, nor that Defendants had

18  notice of the condition.

19  / / /

20  / / /

21

22

23

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 6

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1  III.      **NATURE OF ALLEGED INJURIES**

2          A.      **Medical Treatment**

3          Ms. Bond sustained a fracture through the mid to lower portion of the patella.

4          On December 10, 2016, Ms. Bond underwent open reduction and internal fixation of the

5  right patella fracture and prepatellar bursectomy performed by Dr. Christopher Brown. She was

   discharged on December 12, 2016. Her postoperative course was unremarkable.

6          Ms. Bond completed approximately 175 sessions of physical therapy from December 29,

7  2016 through December 7, 2017.

8          On June 11, 2018, Dr. Brown performed right knee arthroscopy, debridement, partial

9  medial meniscus, removal of tension band wire and contouring of the patella incongruity.

10          Dr. Brown authored correspondence dated September 5, 2018. On physical exam,

11 Ms. Bond had full functional range of motion of the right knee. Varus valgus stability was

   unremarkable and she had healed well. Dr. Brown recommended Ms. Bond continue with her

12 regular exercise program. She wanted to try skiing and Dr. Brown did not see why she could not do

13 so in a controlled fashion.

14          Plaintiff underwent an Independent Medical Exam with Dr. Charles Brooks on

15 August 22, 2018.  With respect to the subject accident Dr. Brooks' diagnoses were as follows:

16 closed, comminuted fracture inferior pole right patella, status post open reduction and internal

17 fixation with cannulated screws and tension band, and pre-patellar bursectomy (December 10,

18 2016); complicated by residual 2.5-3 mm step-off in articular surface of patella, pain, and

19 disability, status post reported removal of the tension band wire, smoothing off retropatellar

20 irregularity, and cleaning up cartilage and medial meniscus (June 11, 2018); possible scalp

   contusion, resolved; right hip sprain, resolved; symptom magnification, due to psychosocial factors

21 and secondary gain.  Dr. Brooks also diagnosed: disc degeneration and degenerative arthritis of the

22 lumbar spine due to genetics, aging and accelerated by chronic smoking; chronic intermittent low

23 back pain, onset after bending, lifting, and twisting on June 12, 2005, with periodic recurrences or

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 7

exacerbations; disc bulge and posterior annular fissure L3-4, due to disc degeneration and possibly prior low back injury; left posterolateral-inferior disc protrusion at L4-5, occurring before February 28, 2015, resulting in left lateral recess stenosis and impingement on the exiting L5 nerve root; bilateral lower extremity pain, onset on the right shortly before January 16, 2006 and on the left sometime before March 23, 2017, probably due to lumbar radiculitis (sciatica); congenital-developmental anomaly in the right patella; right peripatellar injury and/or sprain of medial collateral ligament (per healthcare records), but current history compatible with hyperextension sprain right knee, during insertion of right foot and ankle into ski boot circa January 2008; undifferentiated autoimmune disease with components of CREST syndrome, systemic lupus erythematosus, and Sjogren's syndrome; chronic anxiety and depression, onset before March 12, 2005.

According to Dr. Brooks Ms. Bond's, complaints of anterior knee pain with certain activities and prolonged knee flexion are plausible. However, she is likely exaggerating her activity limitations and symptoms. Dr. Brooks opines that Ms. Bond's chronic intermittent low back pain, sciatica, preexisting right knee pathology and autoimmune issues contribute to her activity limitations. No further medical treatment is indicated, other than regular stretching, strengthening, and aerobic conditioning exercises. Dr. Brooks anticipated it would be 6 to 12 months after the June 11, 2018 surgery before Ms. Bond reached maximum medical improvement.

Fortunately, Ms. Bond has recovered from her accident without significant residuals and has essentially no future medical expenses. She has snowshoed, skied, and participated in another cruise since the subject accident.  No future surgical care has been recommended.

### B.    Pre-Existing Conditions

Ms. Bond was experiencing complaints shortly prior to the subject incident which affected her daily activities of living and precluded her from the more physically strenuous activities and sports she enjoyed participating in.  She completed a lumbar spine/pelvis assessment at Prophysio on October 13, 2016 (less than two months prior to the December 5, 2016 incident) in

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 8

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1  which she indicated she had low back pain, "painful ADLs" (ADL is a common abbreviation for

2  "activities of daily living" in healthcare), "painful walking & sitting," her peripheral joints were

3  "painful because of arthritis," and "painful rotation & extension."  She also completed a Roland-

4  Morris Low Back Pain and Disability Questionnaire dated October 13, 2016 in which she was

   instructed to "Mark only the sentences that describe you today." Plaintiff Bond checked 17 out of

5  24 boxes, to include the following sentences: "Because of my back, I am not doing any jobs that I

6  usually do around the house"; "I walk more slowly than usual because of my back"; "I stay in bed

7  most of the time because of my back"; "I only stand up for short periods of time because of my

8  back"; "my back is painful almost all of the time." She also completed a Functional Pain Scale and

9  indicated that in the last week she had pain ranging from a 2-8 on a scale of 0-10.  Ms. Bond

10 subsequently underwent four sessions of therapy at Prophysio, from October 13, 2016 through

11 October 24, 2016, two weeks before Plaintiffs began their cruise aboard the MS NOORDAM.

12 IV.        **APPLICABLE LAW**

13           A.        **General Maritime Law Applies to this Action**

14           Legal rights and liabilities relating to conduct that injured a party onboard a ship on

15 navigable waters falls exclusively within the Federal Admiralty jurisdiction. An alleged breach of a

16 duty to a passenger on a cruise ship is a maritime tort, and the substantive law applicable to suits

17 by passengers against cruise lines is the general maritime law of the United States, developed by

   the federal courts.  Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959)

18 and Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1320 (11th Cir. 1989).

19           B.        **Negligence Claim**

20           It is well-settled under maritime law that cruise lines owe passengers only a duty to

21 exercise ordinary reasonable care under the circumstances; they are not strictly liable to them.

22 Kermarec v. Compagnie Generale Transantlantique, 358 U.S. 625, 628 (1959); Keefe v. Bahama

23 Cruise Line, Inc., 867 F. 2d 1318 (11th Cir. 1989); Gibboney v. Wright, 517 F. 2d 1054 (5th Cir.

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 9

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1   1975); Rainey v. Paquet Cruises, Inc., 709 F. 2d 169 (2d Cir. 1983); Adler v. Royal Cruise Line,

2   Ltd., 1996 A.M.C. 1349 (N. D. Cal. 1996). Nor is a cruise line the insurer of the safety of its

3   passengers.  Kornberg v. Carnival Cruise Lines, Inc., 741 F. 2d 1332, 1334 (11th Cir. 1984), cert.

4   denied, 470 U.S. 1004 (1985); Monteleone v. Bahama Cruise Lines, Inc., 838 F. 2d 63, 65 (2d Cir.

5   1988).  The United States Supreme Court in Kermarec and its progeny firmly established that in

6   order for Plaintiffs to prevail, they must prove Defendants acted negligently and that said

7   negligence was the proximate cause of their injuries.  Actionable negligence requires a legal duty

8   to use due care, breach of such legal duty, injury, and proximate or legal causation. McDaniel v.

9   U.S., 553 F. Supp. 910 (N.D. Cal. 1982). The mere fact that an accident occurred does not give rise

10  to liability for negligence. Isbell v. Carnival Corp., 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006);

11  Clements v. Chotin Transp., Inc., 496 F. Supp. 163 (M.D. La. 1980).

        Claims for negligence under general maritime law follow the general principles of

12  negligence. To recover for negligence Plaintiffs must demonstrate that:

13      (1)     Defendants owed Ms. Bond a duty of care,

14      (2)     Defendants breached that duty,

15      (3)     Ms. Bond sustained an injury,

16      (4)     There was a causal connection between Defendants' conduct and Ms. Bond's

        injury, and

17      (5)     The resultant harm was reasonably foreseeable.

18      Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1070 (9th Cir. 2001); and In re

19  Cooper/T. Smith, 929 F.2d 1073, 1077 (5th Cir. 1991).

20  / / /

    / / /

21

22

23

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 10

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311

1  **V.       CONCLUSION**

2          Plaintiffs cannot prove negligence on the part of any of the Defendants.  Nor can Ms.

3  Bond prove that her injury was the result of any negligent act of any Defendant.  Accordingly,

4  Plaintiffs are not entitled to an award of damages. Defendants will request a defense verdict.

5  Date:  May 21, 2019                                      FLYNN, DELICH & WISE LLP

6

7                                                           By: */s/Lisa Conner*
                                                                Lisa M. Conner, WSBA #51257
8                                                               Melody C. Chang, WSBA # 51612
                                                                One World Trade Center, Suite 1800
9                                                               Long Beach, CA 90831
                                                                Telephone:   (562) 435-2626
10
                                                                Attorneys for Defendants,
11                                                              CRUISEPORT CURACAO C.V.,
                                                                HOLLAND AMERICA LINE N.V. and
12                                                              HOLLAND AMERICA LINE INC.

13

14

15

16

17

18

19

20

21

22

23

Trial Brief of Defendants
(Case No.: 2:17-cv-01639- MJP) Page - 11

**FLYNN, DELICH & WISE LLP**
ATTORNEYS AT LAW
1420 5th Avenue, Suite 3358
Seattle, WA 98101
(206) 258-6311